Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska  99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Municipality of Anchorage,
Sergeant Roy LeBlanc and Officer James Estes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VIRGINIA DUFFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, | ) |
| SGT. ROY LEBLANC, individually and in | ) |
| His capacity as a police officer for the | ) |
| Municipality of Anchorage, and | ) |
| OFFICER JAMES ESTES, individually and in | ) |
| his capacity as a police officer for the | ) |
| Municipality of Anchorage, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

U.S. District Court Case No. 3:05-cv-152-TMB

## DEFENDANTS' MEMORANDUM IN SUPPORT OF

## MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

For the reasons outlined below, Defendants the Municipality of Anchorage,  Sergeant

Roy LeBlanc and Officer James Estes ("the Defendants"), through counsel, the Municipal Attorney, move for summary judgment on all of the claims alleged by the Plaintiff in her Second Amended Complaint. This memorandum is supported by the attached affidavits of Officers LeBlanc, Estes and Dunn and by the deposition transcripts of Officers LeBlanc and Estes and Ms. Virginia Duffy. Under the undisputed facts, the Defendants are entitled to summary judgment as a matter of law because they did not violate any of Ms. Duffy's constitutional rights. However, even if a constitutional violation occurred, the officers could have reasonably believed that their conduct did not violate a clearly established right. Accordingly, the Defendants respectfully request that this court grant summary judgment in their favor on all of the Plaintiff's claims, including her claim for punitive damages.

## II.    FACTS

On March 23, 2003 at about 9:46 a.m., pursuant to his duties as acting supervisor in the patrol unit of the Anchorage Police Department ("APD"), Officer Roy LeBlanc was traveling northbound on the Seward Highway in Anchorage at about the 7600 block. Affidavit of Roy LeBlanc, paragraph 3. Officer LeBlanc came upon a sedan that was driving north in the right lane. *Id.*, paragraph 4. This sedan was driving 10 miles below the speed limit. *Id.* He kept an eye on this vehicle, as it is extremely rare that a vehicle would go 10 miles below the speed limit on the highway. *Id.* According to the Anchorage Municipal Code, drivers are not supposed to travel at speeds below the speed limit. *Id.* Under AMC 9.26.040A., *Minimum Speeds,* "no person may drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 2 of 43

necessary for safe operation or in compliance with the law." *Id*.

It appeared to Officer LeBlanc that Ms. Duffy was impeding the flow of traffic. Deposition of LeBlanc, Exhibit A, page 12.  Affidavit of LeBlanc, paragraph 4.  Officer LeBlanc therefore followed this vehicle, and noticed it was weaving from line to line within the right lane. *Id*.  As the vehicle approached Tudor Road, it swerved substantially to the right and then sharply corrected itself back to the proper lane of travel.  *Id.*, paragraph 5.

Based on his observations of the sedan, Officer LeBlanc had reasonable suspicion to suspect that the driver was impaired and therefore "driving under the influence," in violation of AMC 9.28.020.  Affidavit of Roy LeBlanc, paragraph 6.  Officer LeBlanc then turned on his emergency lights and initiated a traffic stop. *Id*.  However, after taking the Tudor exit, the driver continued to drive past the spot where the frontage road and exit merge. *Id*.  This spot would have been the most logical place to stop. *Id*.  This action on the part of the driver further aroused Officer LeBlanc's suspicion that the driver was impaired or "under the influence." *Id*.  The most appropriate place to stop would have been the spot where the frontage road and exit merge. Affidavit of LeBlanc, paragraph 6.

The driver of the sedan then stopped her car.  Affidavit of Roy LeBlanc, paragraph 7. Officer LeBlanc made contact with the driver. *Id*.   When Officer LeBlanc asked the driver for her driver's license, registration, and proof of insurance, she seemed confused and disoriented. *Id*.  Exhibit A, page 15.  She fumbled and searched through her wallet to locate the items.  Affidavit of LeBlanc, paragraph 7.  She searched through her wallet several times before producing her driver's license, and seemed confused about what she was providing

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 3 of 43

him. *Id.* This behavior further aroused Officer LeBlanc's suspicions that the driver was under the influence. *Id.* The driver's license produced by the driver indicated that she was a Ms. Virginia Duffy. *Id.* Ms. Duffy was unable to produce her motor vehicle registration, and stated that she kept it at home. *Id.,* paragraph 8. Alaska drivers are required to keep proof of registration with them when they drive. *Id.* Officer LeBlanc explained to Ms. Duffy that he had stopped her for weaving on the road and for driving 10 miles per hour under the speed limit. *Id.*

When Officer LeBlanc asked Ms. Duffy where she had been coming from, she seemed confused and unsure of where she had actually entered the highway. Affidavit of LeBlanc, paragraph 9. She described an area that sounded like the Dimond Blvd. on-ramp. *Id.* The fact that Ms. Duffy was unsure of where she had been further aroused Officer LeBlanc's suspicion that she was impaired. *Id.*

Ms. Duffy's poor driving -- driving 10 miles below the speed limit and weaving back and forth within the lane -- in addition to her confusion after Officer LeBlanc had stopped her, led LeBlanc to decide that he should conduct field sobriety tests on her. Affidavit of Roy LeBlanc, paragraph 10. As a patrol officer, it is LeBlanc's duty to protect the public from impaired drivers. *Id.* Officer LeBlanc did not notice any odor of alcohol coming from Ms. Duffy or her vehicle. *Id.* However, her behavior and demeanor made him think that she was impaired and under the influence of other substances, such as prescription medicine. *Id.* Officer LeBlanc then asked Ms. Duffy if she was taking any prescription medications, but she denied that she was. *Id.*

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 4 of 43

Officer LeBlanc conducted a computer check of Ms. Duffy with respect to her license and registration. Affidavit of Roy LeBlanc, paragraph 11. He returned to her car so that he could conduct field sobriety tests on her. *Id.* Had he not conducted these tests on Ms. Duffy after the behavior he had witnessed, he would have been remiss in his duties as a police officer. *Id.* When Ms. Duffy stepped out of her car, LeBlanc noticed that she swayed while standing. Affidavit of LeBlanc, paragraph 12. He conducted the following field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") Test; the Walk and Turn Test; and the One Leg Stand test. *Id.* Ms. Duffy failed two of these three tests. *Id.* LeBlanc again asked Ms. Duffy if she was taking any medications, including prescription drugs. *Id.* She indicated that she was not taking these substances. *Id.*

Based upon his observations of her impairment, which included her poor performance on the field sobriety tests, the confused behavior after he had stopped her, and the earlier poor driving, Officer LeBlanc concluded that there was probable cause to arrest Ms. Duffy for being under the influence of drugs. Affidavit of Roy LeBlanc, paragraph 13. Exhibit A, page 18. LeBlanc instructed Ms. Duffy to turn around. Affidavit of Roy LeBlanc, paragraph 13. He further told her that she was under arrest for Driving Under the Influence ("DUI"). *Id.* Ms. Duffy told Officer LeBlanc "No." *Id.* He again commanded her to turn around, and told her to put her hands behind her back. *Id.* Officer LeBlanc further told Ms. Duffy that she would be charged with resisting arrest if she did not cooperate. *Id.* Duffy continued to fail to comply with his requests (that she turn around and put her hands behind her back). *Id.* However, when he placed his right hand on her right arm, she complied. *Id.* She was then

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 5 of 43

handcuffed without struggle or resistance. *Id.*

Officer James Estes served as an officer in the patrol division and was on duty the night of March 23, 2003. Affidavit of James Estes, paragraph 2. Officer Estes was listening to his police radio and heard acting supervisor LeBlanc state that he had arrested someone for DUI at Tudor Road and the Seward Highway. Affidavit of James Estes, paragraph 2. When Officer Estes responded to the location to assist LeBlanc. *Id.* Affidavit of Affidavit of Roy LeBlanc, paragraph 14. When Officer Estes reached the location, he noticed that Officer LeBlanc had stopped a white 1982 Datson with an Alaska plate, BVP711. Affidavit of Officer Estes, paragraph 4. Officer Estes advised "Channel Two" that they needed a tow truck at their location for a DUI suspect. *Id* Acting Supervisor LeBlanc informed Officer Estes that Ms. Duffy had not been drinking but that he believed she was impaired by drug use of some type. *Id.* Officer Estes took custody of Ms. Duffy and completed the processing of her for DUI. Affidavit of Roy LeBlanc, paragraph 14. Affidavit of James Estes, paragraph 4. Officer Estes also requested the impoundment of Ms. Duffy's car, which is the proper procedure when an individual has been arrested for a DUI. Affidavit of LeBlanc, paragraph 14. Affidavit of Estes, paragraph 5.

Ms. Duffy requested her back pack and book bag from her car. Affidavit of Officer Roy LeBlanc, paragraph 15. These two items were on the front seat. *Id.* The back pack was open. *Id.* LeBlanc noticed a plastic bag inside of the back pack with several prescription bottles without labels. *Id.* One bottle contained aspirin; the other three bottles contained unknown drugs. *Id.* Officer LeBlanc seized these bottles as evidence. *Id.* Once under arrest,

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 6 of 43

Ms. Duffy told Officer LeBlanc that she did take hormone pills, but no other medication. *Id.* However, Officer LeBlanc's experience and training as a police officer, in addition to the behaviors that Ms. Duffy had exhibited, made him suspect that Ms. Duffy was under the influence of a prescription drug of some type. *Id.*

LeBlanc then completed a property and evidence report concerning the drugs that he had found and turned those drugs into the property and evidence department. Affidavit of LeBlanc, paragraph 16. Officer LeBlanc then placed property tags on the following drugs: an unknown maroon pill (Property Tag # 537433); two orange capsules (Property Tag # 537434); and 4 whole pills (Property tag # 537432). *Id.,* paragraph 17. It is LeBlanc's understanding that these pills were never analyzed due to the fact that the Municipal Prosecutor's Office dismissed the DUI charge against Ms. Duffy. *Id.* He has checked with the Property and Evidence custodian and he has indicated that the pills he seized have now been destroyed pursuant to department policy. *Id.*

Officer Estes waited until the tow truck arrived and transported Ms. Duffy to the Seely Substation in Anchorage for processing. Affidavit of Estes, paragraph 6. As they drove to the substation, Ms. Duffy told Estes that she had not been drinking. *Id.* Estes told Duffy that although he believed she had not been drinking, state law requires that the police take breath tests when they arrest people for driving under the influence. *Id.* In this case, Officer LeBlanc had arrested Ms. Duffy for driving under the influence. *Id.* In this case, Officer LeBlanc had arrested Ms. Duffy for driving under the influence because he had probable cause to believe that she was under the influence of prescription medications. *Id.* Officer

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 7 of 43

Estes had no reason to question Officer LeBlanc's decision to stop and then to arrest Ms. Duffy based on the fact that she appeared to have been driving under the influence. *Id.* On the contrary, Ms. Duffy's behavior was consistent with the behavior of someone who was under the influence of some type of drug or medication. *Id.* She did not seem to understand or believe him when he indicated to her that he was taking her to the sub-station. *Id.*

Ms. Duffy asked Officer Estes how she could prove that she had not taken any medication that would impair her driving. Affidavit of Estes, paragraph 7. Officer Estes told Ms. Duffy that the only test that he knew of that could determine if she was under the influence of such drugs or medications was a blood test. *Id.* However, during the whole time that he was with Ms. Duffy, her behavior was not normal and seemed consistent with the behavior of someone who is impaired due to drugs or prescription medication. *Id.* At no time during the period of time Officer Estes was with her did he ever have any reason to doubt the wisdom of Acting Supervisor LeBlanc's actions in arresting her. *Id.* Officer LeBlanc's actions seemed appropriate in view of the way she was behaving. *Id.*

At the Seely Substation, Estes started the fifteen minute observation period as required. Affidavit of Estes, paragraph 8. After 15 minutes, Ms. Duffy provided a breath sample of .000. *Id.* Officer Estes then read Ms. Duffy her Notice of Right to Independent Chemical Test. *Id.* Ms. Duffy reported that she wanted a test at municipal expense. *Id.* Officer Estes finished reading her the forms and gave her copies of them. *Id.*

Officer Estes transported Ms. Duffy to Alaska Regional Hospital for a blood draw. Affidavit of Estes, paragraph 9. The purpose of the blood draw was to determine if she had

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 8 of 43

taken prescription or other medications, including sleeping pills and other central nervous system depressants and stimulants. *Id.* After the blood draw at Alaska Regional had been completed, Officer Estes transported Ms. Duffy to the jail where she was remanded. *Id.*, paragraph 10. Officer Estes used the bail schedule to process her. *Id.*

When Estes removed Ms. Duffy's handcuffs, she said she hoped that they had not cut her wrist. Affidavit of Estes, paragraph 11. However, there were no cuts visible on her wrist and Estes told her that she did not have any cuts that he could see. *Id.* Ms. Duffy told Officer Estes that she was worried about "micro size" cuts. *Id.* Estes found this odd, because she did not appear to have any marks or cuts on her wrists. *Id.* During his interaction with Ms. Duffy, she seemed lethargic, which led Officer Estes to believe that Officer LeBlanc had correctly concluded that she was under the influence of prescription medications or other drugs such as sleeping pills or other central nervous system depressants or stimulants. *Id.*

On March 26, 2003, Officer LeBlanc applied for and received a search warrant to have the blood that had been drawn from Ms. Duffy on March 23, 2003 tested for the presence of drugs, including prescription drugs. Affidavit of LeBlanc, paragraph 19. Officer LeBlanc served the warrant on Alaska Regional Hospital ("Alaska Regional") with arrangements for the results to be mailed to them at the Anchorage Police Department. *Id.* Unfortunately, the drug screen performed by National Medical Services at the request of Alaska Regional did not test for the presence of prescription drugs when it analyzed the blood drawn from Ms. Duffy. *Id.* Such prescription drugs that should have been tested for include sleeping pills and other central nervous system depressants and stimulants. *Id.*

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 9 of 43

In their experience and training as police officers, Officers Estes and LeBlanc have learned that many prescription drugs can cause drivers to be impaired. Affidavit of Estes, paragraph 12. Affidavit of LeBlanc, paragraph 20. Users of prescription medications can pose just as much of a threat to fellow drivers as users of illicit drugs. *Id.* For that reason, when officers patrol the streets of Anchorage, they are just as much on the look-out for impaired driving which results from the use or abuse of prescription medications as they are for impaired driving which results from alcohol or illicit drug use. *Id.*

The Anchorage Municipal Code, Section 9.28.020 specifically states that a person is guilty of driving under the influence if he operates a motor vehicle while under the influence of an alcoholic beverage, inhalant or depressant, hallucinogenic, stimulant or narcotic drug as defined in AS 11.71.140- 11.71.190.[1]

---

1 AMC 9.28.020 B.1.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 10 of 43

Affidavit of Roy LeBlanc, paragraph 20.  In addition, the Municipal Code states that a person is guilty of driving under the influence if he is driving "under the influence of a drug, or another substance that when introduced into the body acts as a central nervous system depressant or stimulant, to a degree which renders the person incapable of driving safely."[2] Ms. Duffy's behavior on the night that Officer LeBlanc arrested her and Estes completed the arrest was consistent with that of someone who is under the influence of drugs or a substance that, when introduced into the body, acts as a central nervous system depressant or stimulant, to a degree which renders the person incapable of driving safely.  Affidavit of Estes, paragraph 13.  Affidavit of LeBlanc, paragraph 21.

Ms. Virginia Duffy is on [Social Security] Disability for life due to psychiatric problems.  Deposition of Duffy, Exhibit B, page 113.  She has not worked for pay since 1976. *Id.,* page 6.  She has been on Social Security Disability for about 30 years. *Id.*  Prior to being stopped by Officer LeBlanc on March 23, 2003, she had been stopped in 2000 on campus for failure to stop.  *Id.,* page 8.

Ms. Duffy recalls that she was returning from dinner at The Royal Fork Restaurant in South Anchorage on March 23, 2003 when Officer LeBlanc stopped her. Exhibit B, page 18.  She does not remember if she had dinner with another person. *Id.*  She does not remember where she was before she dined at the Royal Fork. *Id.*  She was heading home on the Seward

2  AMC 9.28.020 B.4.
Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 11 of 43

Highway to her home on LaTouche Street. *Id.,* page 19. She was driving in the right hand lane, and noticed police lights. *Id.* She did not think that there was enough room to pull over so she exited at Tudor road, and pulled over. *Id.* An officer came to her door, and she asked him what she had done. *Id.* The officer told her that she had been going 55 miles in a 65 mile zone. *Id.* She admits that her car could have been weaving in and out of the lane before Officer LeBlanc stopped her. *Id.,* page 57. She admits that she was driving 10 miles below the speed limit. *Id.* at 56. She further admits that the officer had turned on his red lights and that they were flashing. *Id.* at 21. Ms. Duffy did not know that she had to keep proof of registration in her automobile. *Id.* at 25. She admits that she could not locate her registration for Officer LeBlanc and that she did not know where it was. *Id.* at 27.

Ms Duffy admits that she had trouble with the walk and turn test. Exhibit B, page 37, lines 6-11. Ms. Duffy admits that she had trouble maintaining heel to toe position when Officer LeBlanc had her perform the walk and turn test. *Id.* at 37, lines 17-20. (She later testified that she did not recall having trouble doing heel to toe during the Walk and Turn test. *Id.* at 38-39). She also had trouble with the one leg stand test. *Id.* at 43, lines 6-10. She kept her arms out to balance herself during part of the testing. *Id.* pages 42-43. She admits that if she did not use her arms to balance herself, she would have fallen over. *Id.,* page 42, lines 10-11. According to Duffy, Officer LeBlanc asked her if she was taking any medication that would impair her driving. *Id.* at 45, lines 13-18. She told him "No." *Id.*, lines 17-18. Ms. Duffy denies that she has drug problems. Exhibit B, page 89. Duffy admits that she was given Sonata in January, 2003. *Id.* at 80-81. She "would think" that she received

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 12 of 43

Sonata[3] if the doctor's record states that she received it. *Id.* at 81. She further states that that "it doesn't necessarily mean I took it." *Id.* at 80. She does not deny that she was given Risperdal[4] in 2002. *Id.* at page 88.[5]

Ms. Duffy does admit that she had 4 bottles of pills in her back pack and then three of those bottles were unlabeled and contain maroon and orange pills. *Id.* at 94.

In discovery responses, Ms. Duffy has stated that she "has weak knees" and that she is "neurologically impaired" and that she believes that "the tow truck was called for prior to her taking the field sobriety tests." See, Plaintiff's Responses to Municipality of Anchorage's First Discovery Requests to Plaintiff, Exhibit C, page 8. (Answer to Interrogatory No. 12). However, Officer LeBlanc took her stated physical problems – her "bad ankles" -- into account when he had her take the field sobriety tests. Exhibit A, page 18, lines 22-24; page 19, lines 1-25; page 26, lines 22-25; page 27, lines 1-3. In addition, Ms. Duffy admits that her records from her physician Dr. Beacham indicate that as of March 1, 2006, her "neurologic, speech, gait and orientation" were normal. Exhibit B, page 68. Moreover, she has failed to establish that the tow truck was called before the tests were administered.

---

3 Sonata is a schedule 4 substance with hypnotic effects.  See, Exhibit K  to Deposition of Duffy.
4 Risperdal is an anti-psychotic drug.  See, Exhibit K to Deposition of Duffy.
5 For purposes of this motion, the Defendants will not dispute Ms. Duffy's contention that she does not have drug problems.  Defendants do argue, however, that under these circumstances Officer LeBlanc had more than ample cause to arrest her for DUI.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 13 of 43

Officer Estes arrived after Ms. Duffy's arrest and then called the tow truck. See, Affidavit of Estes, paragraph 3-4. See, also page 4 of report of Expert Steve Dunn, exhibit 2 to Affidavit of Expert Steve Dunn. ("According to the CAD printout of the call, Sergeant LeBlanc advised Dispatch that Ms. Duffy was in custody at 2200 hours and Officer Estes requested the DUI impound at 2208 hours.") *Id.* Moreover, Ms. Duffy has now testified that Officer Estes arrived after she had been arrested and while she was being handcuffed by LeBlanc. Exhibit B, page 97.

While Duffy denies that she told Officer LeBlanc "no" when he commanded her to turn around and put her arms behind her back, she gives the following description of her arrest:

> He was baring his teeth at me and -- he was baring his teeth at me, and I asked him who was his superior and he told me I'm in charge here, do you object if I search your car, and I said, yes I do. And he said you're under arrest and he grabbed my arms and he swung me around, and -- and then he put handcuffs on.

Exhibit B, page 47, line 25, to page 48, lines 1 through 5. Ms. Duffy again repeated the event and why in her view LeBlanc had used inappropriate force:

> He said you're under arrest, he grabbed my arms and he swung me around, and he put the handcuffs on me.

*Id.,* page 50, lines 15-17. When asked again to explain why she felt "assaulted" by the Officer, Ms. Duffy again testified:

> LeBlanc grabbed me and then put the handcuffs – and then Officer Estes came alongside of my car at approximately the same time and then he – I don't ever remember him touching me, so he must have just verbally said come – come with me, and then we went to the car that was in back of my car.

*Id.,* page 97.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 14 of 43

Ms. Duffy has not sought medical attention for any of the injuries referred to in her complaint. See, Exhibit C, page 5. (Response to Interrogatory No. 4). Exhibit B, page 111. She merely states that her damages are that she is "out $500" (for the impoundment); that she is "afraid to drive;" and that she is "afraid" of the police. *Id.* at 111.

Officer Steve Dunn is a drug recognition expert ("DRE") with the Anchorage Police Department ("APD") and has served as a DRE since May, 2004. Affidavit of Steve Dunn, paragraph 2. As a drug recognition expert in the Traffic Division of the APD, his duties entail instructing and assisting other officers where drug impairment is suspected. *Id.* The DRE program was not in existence in March, 2003. *Id.* It was not initiated in Anchorage until 2004. *Id.* Officer Dunn has been asked by the Municipal Attorney's Officer to review the police reports and all discovery information concerning the arrest of Ms. Duffy on March 23, 2003. *Id.,* paragraph 3. He has also now had the chance to review the recent deposition transcripts of Virginia Duffy and Officers LeBlanc and Estes. *Id.* On April 25, 2006, Officer Dunn wrote a report which contained his conclusions as well as the data relied upon. *Id.* In his report, Dunn has concluded that the actions taken by Officer LeBlanc in stopping, arresting and searching Ms. Duffy's bags, including his use of restraint, was appropriate and in keeping with department policy. *Id.,* paragraph 4. He has also concluded that both Officers LeBlanc and Estes performed their duties as officers and investigators appropriately and within the scope of state statute and policies. *Id.* At the time he wrote his report, Officer Dunn did not have the benefit of having read Ms. Duffy's deposition or the officers'

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 15 of 43

depositions, as they had not yet been taken. *Id.*, paragraph 6. However, now that he has read those depositions, his conclusion that the officers acted appropriately is confirmed. *Id.* Even if one were to assume that Ms. Duffy's version of events is true, both officers acted appropriately. *Id.*

## V.    LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that he moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment is appropriate only when, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact with respect to the claims. *Tayborn v. City and County of San Francisco,* 341 F.3d 957, 960 (9th Cir. 2003). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id. at 325; Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 16 of 43

to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of acclaim on which the non-moving party has the burden of proof. *Celotex*, *supra,* 477 U.S. at 323.  In the present case, no material facts are in dispute and the defendants are therefore entitled to summary judgment under the doctrine of qualified immunity.

## III.    ARGUMENT

### A.  The doctrine of qualified immunity applies to this action.

In her second amended complaint, Ms. Duffy alleges the following causes of action against the Municipality and Officers LeBlanc and Estes for her arrest on March 23, 2005: 1. deprivation of constitutional rights; 2. assault and battery; 3. false arrest and false imprisonment; 4. violation of state constitution due to unreasonable search and seizure; 5. violation of AS 11.76.110; and 6. violation of 42 U.S.C. Section 1983.  However, none of these claims have any merit.  The actions of Officer LeBlanc in stopping, detaining and arresting Ms. Duffy, and in handcuffing her and later searching her backpack are discretionary functions for which he is entitled to qualified immunity.  In addition, Officer Estes' actions in processing her for the arrest are also entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded form liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Qualified immunity is 'an entitlement not to stand trial or face the other

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 17 of 43

burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001). A ruling should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive. *Id.* at 200. "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

"To evaluate a claim of qualified immunity, a court must first consider the threshold question of whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right." *Saucier v. Katz, supra,* 533 U.S. 194, 121 S.Ct. 2151 (2001). If no constitutional right was violated, the court need not inquire further. *Id.* at 2156. If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established right. *Id.* at 2158-59. This requires an assessment of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 2156. Thus, to survive the Defendants' motion for summary judgment on qualified immunity, the Plaintiff must state a violation of a constitutional right, and that right must have been clearly established at the time that Officer LeBlanc detained and arrested Ms. Duffy on March 23, 2003. As discussed below, the defendants did not violate Ms. Duffy's constitutional rights. However, even if they had, the officers are entitled to qualified immunity on the actions that they took.

**B.  The court should dismiss all of the Plaintiff's claims on the basis that none of her constitutional rights have been violated.**

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 18 of 43

1.      **Deprivation of constitutional rights (Count One) (the stop, arrest and detention, and search of back pack)**

In count one of her Second Amended Complaint, Ms. Duffy alleges that she "was pulled over without reasonable suspicion and was arrested and detained without probable cause." Second Amended Complaint, Count One, paragraph 12. She further alleges that her "backpack was searched without a search warrant" and that she "was deprived of her physical liberty; and incurred medical and other expenses." Id., paragraph 13. Ms. Duffy alleges that the stop, arrest and search of her backpack violated her constitutional rights. Because these actions -- the stop, arrest and detention – were performed by Officer LeBlanc, this claim should be dismissed as to Officer Estes on that basis alone. As to Officer LeBlanc, his conduct with regard to the stop, detention and arrest did not violate Ms. Duffy's rights. Thus, this claim must be dismissed as to LeBlanc as well.

**The stop**

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744 (2002). (quoting *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868 (1968); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690 (1981). "Because the 'balance between the public interest and the individual's right to personal security' tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.,* citations omitted.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 19 of 43

"An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Id.,* quoting *Terry, supra.*

"When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu, supra,* 534 U.S. at 273. (references omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (citations omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the even required for probable cause, and it falls considerable short of satisfying a preponderance of the evidence standard. *Id.* (citations omitted).

The United States Supreme Court has stated that "Our cases have recognized that "the concept of reasonable suspicion is somewhat abstract." *United States v. Arvizu, supra,* 534 U.S. 266, 273 (citations omitted). "We have deliberately avoided reducing it to a 'neat set of legal rules.'" *Id.* (citations omitted). The Supreme Court has therefore rejected a holding by the Court of Appeals that "distinguished between evidence of ongoing criminal behavior and probabilistic evidence because it 'created unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment.'" *Id.* at 273, referencing *United States v. Sokolow,* 490 U.S. 1, 7-8, 109 S.Ct. 1581 (1989).

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 20 of 43

In *United States v. Arvizu, supra,* the court examined whether the Ninth Circuit Court of Appeals had properly reversed a conviction based on a conditional plea of guilty to possession with intent to distribute marijuana. The Court of Appeals had reversed a district court's denial of a motion to suppress marijuana found in a defendant's minivan. In that case, a border agent in Arizona stopped a minivan with adults and children because he suspected that they was illegal activity afoot by such factors as the presence of the minivan in an area more known for drug smuggling than picnicking, and the behavior of the children, who appeared to be mechanically waving at the agent from the back seat. The Supreme Court, in reversing and remanding the Court of Appeals' decision, stated as follows:

> Having considered the totality of the circumstances and given due weight to the factual inferences drawn by the law enforcement officer and District Court Judge, we hold that Stoddard had reasonable suspicion to believe that respondent was engaged in illegal activity. It was reasonable for Stoddard to infer from his observations, his registration check, and his experience as a border patrol agent that respondent had set out from Douglas [Arizona] along a little-traveled route used by smugglers to avoid the 191 checkpoint. Stoddard's knowledge further supported a commonsense inference that respondent intended to pass through the area at a time when officers would be leaving their backroads patrols to change shifts. The likelihood that respondent and his family were on a picnic outing was diminished by the fact that the minivan had turned away from the known recreational areas….Finally…Stoddard's assessment of respondent's reactions upon seeing him and the children's mechanical-like waving, which continued for a full four to five minutes, were entitled to some weight.

*Id.* at 277. The Supreme Court further stated that even if the facts of the case suggested innocent conduct, such as a family in a minivan on an outing, "a determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct."

*Id.,* referencing *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673(2000) (that flight from

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 21 of 43

police is not necessarily indicative of ongoing criminal activity does not establish Fourth Amendment violation). "Undoubtedly, each of these factors alone is susceptible of innocent explanation, and some factors are more probative than others." *Id.* "Taken together, we believe they sufficed to form a particularized and objective basis for Stoddard's stopping the vehicle, making the stop reasonable within the meaning of the Fourth Amendment." *Id.*, 277-278.

In *United States v. Fernandez-Castillo,* 324 F.3d 1114 (9th Cir.2003), which was decided after *Arvizu, supra,* the Ninth Circuit Court of Appeals held that a Montana Highway Patrol Officer had reasonable suspicion to stop a driver for driving while impaired. The officer stopped a driver for driving under the influence based on the following facts: he had received reports from a reliable source that a vehicle was being driven erratically; the officer's own observations corroborated the report due to the fact that he had observed the car weaving within its lane; and the officer had noticed the driver sitting very close to the steering wheel, a behavior the officer knew was typical of impaired drivers. The court therefore upheld the district court's finding that the investigatory stop was constitutional and that the evidence seized (methamphetamine) did not need to be suppressed.

Like the law enforcement officers in *Arvizu, supra,* and in *United States v. Fernandez-Castillo, supra,* under the totality of circumstances, Officer LeBlanc had reasonable suspicion to stop Ms. Duffy. First, he had observed that Ms. Duffy was driving about 10 miles below the speed limit. Affidavit of LeBlanc, paragraph 4. Under AMC 9.26.040 A, no person may drive a motor vehicle at such a slow speed as to impede the

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 22 of 43

normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with the law.  Affidavit of LeBlanc, paragraph 4.  It appeared to Officer LeBlanc that Ms. Duffy's driving was impeding the normal movement of traffic. Affidavit of LeBlanc, paragraph 4.  Exhibit A, page 12.  Officer LeBlanc also noticed that the vehicle driven by Duffy was weaving from line to line within the lane. *Id.*

Moreover, as the vehicle approached Tudor Road, it swerved substantially to the right and then sharply corrected itself back to the proper lane of travel.  *Id.*

Based on his observations, Officer LeBlanc had reasonable suspicion to suspect that Ms. Duffy was impaired and therefore driving under the influence, in violation of AMC 9.28.020.  Affidavit of LeBlanc, paragraph 6.  After taking the Tudor exit, Ms. Duffy continued to drive past the spot where the frontage road and exit merged.  *Id.*  This conduct further aroused LeBlanc's suspicion. *Id.*  Accordingly, like the officers in *Arvizu, supra,* and in *Fernandez-Castillo, supra,* Officer LeBlanc's suspicion that Ms. Duffy was committing a crime was reasonable under the totality of the circumstances he encountered.  Therefore, the Plaintiff's constitutional claim based on an allegedly unconstitutional stop by Officer LeBlanc lacks merit.

### The arrest and detention

Because Officer LeBlanc had probable cause to arrest Ms. Duffy for driving under the influence, Ms. Duffy's claim for false arrest necessarily fails.  *Hart v. Parks,* 450 F.3d 1059, 1069 (9th Cir.2006) citing *Carbrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir.1998) (per curiam)  "To prevail on his Section 1983 claim for false arrest…[the plaintiff]

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 23 of 43

would have to demonstrate that there was no probable cause to arrest him.") "Probable cause exists when 'the facts and circumstances within [the officers knowledge] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Hart v. Parks, supra,* 450 F.3d 1059, 1065-66 (citations omitted). "Police must only show that, 'under the totality of the circumstances, 'a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Id.* (citations omitted).

In *Hart v. Parks, supra,* an arrestee brought a civil rights action against police officers and others, alleging unlawful arrest and defamation. The arrestee argued that the police had violated his civil rights for arresting him when much of the information they had relied on was hearsay. The district court granted summary judgment to the defendants, and the Plaintiff appealed. On appeal, the Ninth Circuit Court of Appeals held that, in determining probable cause to support arrest, police officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. The court stated:

> Hart's next contention is that the police did not have probable cause to arrest him because the facts gave rise to a variety of "inferences, some of which supported Hart's innocence. (References omitted.) Of course, facts may always give rise to a variety of inferences. Yet, it is settled law that officers may "'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' " (citations omitted). The fact that other inferences are possible does not mean that there is a triable issue of fact as to whether there was probable cause.

*Id.,* 450 F.3d at 1067.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 24 of 43

Like the officers in *Hart, supra,* Officer LeBlanc drew upon his own experience and specialized training to make inferences from and deductions about the information available to him about Ms. Duffy that might elude an untrained person. The fact that other inferences from her conduct were possible does not mean that there is a triable issue of fact as to whether there was probable cause. The fact that Ms. Duffy now suggests that the "ruts" on the road and other conditions may have caused her to appear to swerve does not change the fact that in LeBlanc's view, her driving was consistent with an impaired driver's. Exhibit B, page 20. Moreover, the fact that in her opinion, it was her alleged neurological impairment and not drug use which caused her to perform poorly on the field sobriety tests, does not change Officer LeBlanc's reasonable inferences based on his specialized training and experience. See, Exhibit C, page 8. (Answer to Interrogatory No. 12).

In this case, under the totality of circumstances, Officer LeBlanc had probable cause to arrest Ms. Duffy for driving under the influence, in violation of AMC 9.28.020. He had observed Ms. Duffy weaving from line to line and going 10 miles below the speed limit. Affidavit of LeBlanc, paragraph 4. As her vehicle approached Tudor Road, Officer LeBlanc also observed the vehicle swerve substantially to the right and then sharply correct itself back to the proper lane of travel. Affidavit of LeBlanc, paragraph 5. After taking the Tudor exit, Ms. Duffy continued to drive past the spot where the frontage road and exit merge. Affidavit of LeBlanc, paragraph 6. This spot would have been the most logical place to stop. *Id.* This action on the part of Ms. Duffy further aroused LeBlanc's suspicion that she was impaired or "under the influence." *Id.* When Officer LeBlanc asked Ms. Duffy for her driver's license,

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 25 of 43

registration, and proof of insurance, she seemed confused and disoriented. *Id.,* paragraph 7. She searched through her wallet several times before producing her driver's license, and seemed confused about what she was providing him. *Id.* This behavior further aroused LeBlanc's suspicions that Ms. Duffy was impaired. *Id.* When Officer LeBlanc asked Ms. Duffy where she had been coming from, she seemed confused and unsure of where she had actually entered the highway. *Id.,* paragraph 9. The fact that Ms. Duffy was unsure of where she had been further aroused Officer LeBlanc's suspicion that she was impaired. *Id.*

Ms. Duffy's poor driving, including driving 10 miles below the speed limit and weaving back and forth within her lane, in addition to her confusion after he had stopped her, led Officer LeBlanc to decide that he should conduct field sobriety tests on Ms. Duffy. Affidavit of Roy LeBlanc, paragraph 10. Officer LeBlanc did not notice any odor of alcohol coming from Ms. Duffy or her vehicle. *Id.* However, her behavior and demeanor made him think that she was impaired and under the influence of other substances, such as prescription medicine. *Id.* Officer LeBlanc asked Ms. Duffy if she was taking any medications, but she denied that she was. *Id.* Officer LeBlanc then conducted field sobriety tests on Ms. Duffy. Affidavit of LeBlanc, paragraph 11. Had he not conducted these tests on Ms. Duffy after the behavior he had witnessed, he would have been remiss in his duties as a police officer. *Id.* When she stepped out of her car, LeBlanc noticed that she swayed when standing. Affidavit of LeBlanc, paragraph 12. He then conducted field sobriety tests. *Id.* Duffy failed two of these three tests. *Id.* LeBlanc again asked Ms. Duffy if she was taking any medications, including prescription drugs. *Id.* Duffy indicated that she was not taking these substances.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 26 of 43

*Id.*

Based upon his observations of her impairment, which included her poor performance on the field sobriety tests, the confused behavior after he had stopped her, and the earlier poor driving, LeBlanc concluded that there was probable cause to arrest Ms. Duffy for being under the influence of drugs.  Affidavit of LeBlanc, paragraph 13.  Officer LeBlanc's experience and training as a police officer, in addition to the behaviors that Ms. Duffy had exhibited, made him suspect that Ms. Duffy was under the influence of a prescription drug of some type.  Affidavit of LeBlanc, paragraph 15.  Therefore, under the totality of the circumstances, Officer LeBlanc had probable cause to arrest Ms. Duffy.

Ms. Duffy admits that her car could have been weaving in and out of the lane.  Exhibit B, page 57.  Ms. Duffy does not dispute that she was driving 10 miles below the speed limit. *Id.*, page 56.  She also does not dispute that when Officer LeBlanc stopped her, he told her that she was going 55 in a 65 mile zone.  *Id.*, page 19.  Ms. Duffy admits that she had difficulty with the walk and turn test.  *Id.*, page 37, lines 6-11. (She later testified that she did not recall having trouble doing heel to toe during the Walk and Turn test *Id.,* page 38-39) She also remembers having trouble maintaining the heel to toe position.  *Id.,* page 37, lines 18-20.  She also admits that she had trouble with the one leg stand test.  *Id.,* page 43, lines 6 through 10.  She kept her arms out to balance herself.  *Id.,* pages 42-43.  Therefore, even under her rendition of the facts, there is sufficient evidence to establish probable cause existed for her arrest. *Mistretta v. Prokesch,* 5 F.Supp.2d 128, 133 (E.D. N.Y. 1998) (Even where factual disputes exist, a Section 1983 claim may fail if the plaintiff's version of events

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 27 of 43

is sufficient to establish probable cause to arrest.)

### The search of the backpack

Officer LeBlanc's search of Ms. Duffy's back pack was also lawful.  There is no question that the search of the back pack occurred after the arrest, while she was sitting in the police car, and before Officer Estes took her down to the substation.  Exhibit B, page 95. Affidavit of LeBlanc, paragraph 15.  Under the United States Constitution, "a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467 (1973).

"It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment." *Id.*  Thus, the search of Ms. Duffy's backpack was a reasonable search under the Fourth Amendment.  "A suspect's expectation of privacy diminishes after a lawful arrest, such that a search of the suspect's person and pockets is reasonable. *See, United States v. Berry,* 560 F.2d 861, 864 (7th Cir. 1977), *vacated on other grounds,* 571 F.2d 2 (7th Cir.1978).  *see, also, Crawford v. State,* 138 P.3d 254 (Alaska 2006). (court held that warrantless search of automobile's center console was reasonable incident to arrest for reckless driving).

In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034 (1969), the Supreme Court held that, in conducting a search incident to an arrest, police officers could search the area "within

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 28 of 43

[the arrestee's] immediate control" because of a concern for officer safety and a need to prevent evidence concealment or destruction. *Id.* at 763.  In this case, Officer LeBlanc had arrested Ms. Duffy for driving under the influence.  He believed that she was under the influence of prescription drugs and not alcohol.  Accordingly, it was appropriate  to search Ms. Duffy's back pack and to seize the pill bottles for testing.

### 2.    Assault and Battery (Count Two)

In Count Two of her complaint, Ms. Duffy alleges that "Ms. Duffy was assaulted and battered by Officer Leblanc." Second Amended Complaint, paragraph 15.  At her deposition, when asked about the Officer's arrest and her response, Duffy testified as follows:

> A:   He was baring his teeth at me and – he was baring his teeth at me, and I asked him who was his superior and he told me I'm in charge here, do you object if I search your car, and I said, yes I do.  And he said you're under arrest and he grabbed my arms and he swung me around, and -- and then he put handcuffs on.

Exhibit B, page 47, line 25 to page 48, lines 1 through 5.  Duffy again repeated the event in her view and why she felt that Officer LeBlanc had used inappropriate force:

> He said you're under arrest, he grabbed my arms and he swung me around, and he put the handcuffs on me.

*Id.,* page 50, lines 15-17. When asked again to explain why she felt "assaulted" by the Officer, she again testified:

> LeBlanc grabbed me and then put the handcuffs -- and then Officer Estes came alongside of my car at approximately the same time and then he -- I don't ever remember him touching me, so he must have just verbally said come – come with me, and then we went to the car that was in back of my car.

*Id.,* page 97.  Even under Ms. Duffy's version of the facts, Officer LeBlanc did not use

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 29 of 43

excessive force on her and thus violate a constitutional right.  Thus, this claim should be dismissed on the undisputed facts.  Moreover,  under Ms. Duffy's version of events, Officer Estes did not arrive until after Ms. Duffy had been arrested and handcuffed.  *Id.*  see, also, Affidavit of LeBlanc, paragraph 13 and 14.  This claim should therefore be dismissed against Officer Estes on that basis alone.

*Graham v. O'Connor* established that the Fourth Amendment is the exclusive standard to analyze all claims that law enforcement officers have used excessive force during arrests, investigative stops or other seizures of free citizens. *Id.,* 490 U.S. 386 (1989).  The key standard for this analysis is "objective reasonableness." *Id.* at 395 ("Today we hold that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") (emphasis in original). *Id.*  There is no exact formula for the test; a court must examine "the facts and circumstances of each particular case." *Id.*  Among those facts to be considered are the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  (citing *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985).  A court reviewing a particular use of force must use "the perspective of a reasonable officer on the scene, rather than…20/20…hindsight." *Id.*

The court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 30 of 43

tense and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. O'Connor, supra,* 490 U.S. 386, 396-397, 109 S.Ct. 1865 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

 *Saucier v. Katz,* 533 U.S. 194, 121S.Ct. 2151 (2001) is the latest and most complete Supreme Court case showing the methods and standards to be used in analyzing excessive force claims under 42 U.S.C. Section 1983, and the application of the *Graham* "objective reasonableness" analysis. In *Saucier ,* Elliot Katz, an animal rights demonstrator, was in attendance at an event to celebrate the conversion of the Presidio Army Base into a national park. Former Vice President Gore was one of the speakers at the event. Donald Saucier, a military police officer on duty, had been warned by his superiors of the possibility of demonstrations that day. Mr. Katz had been identified as a potential protestor. At the time that Vice President Gore began to speak, Mr. Katz reached the fence which had been erected as a barrier between the speakers and the public, and started to unfold a cloth banner that read "Please Keep Animal Torture Out of Our National Parks." Officer Saucier and another officer then grabbed Katz from behind, took the banner, and rushed Katz out of the area. Each officer had one of respondent's arms, half-walking, half-dragging him, with his feet "barely touching the ground." *Id.* at 198. The officers took Katz to a nearby military van, where Katz claimed he was "shoved" or "thrown aside." The reason for the shove was not clear. *Id.* Mr. Katz placed his feet somewhere on the outside of the van, perhaps the bumper,

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 31 of 43

but there was a dispute as to whether he did so to resist. *Id.* Katz claimed that as a result of the shove, he fell to the floor of the van, where he caught himself just in time to avoid any injury. *Id.* The officers drove Katz to a military police station, held him for a brief time, then released him.

Katz later brought a *Bivens* action, alleging violations of various rights. Officer Saucier moved for summary judgment on the basis of qualified immunity with respect to Katz's claim that he had used excessive force, in violation of the Fourth Amendment. The District Court denied the motion for summary judgment on qualified immunity, and the United States Court of Appeals for the Ninth Circuit affirmed. On appeal, however, the United States Supreme Court reversed the Ninth Circuit, holding that (1) the inquiry as to whether officers are entitled to qualified immunity for the use of force is distinct from an inquiry on the merits of the excessive force claim; and (2) the officer was entitled to qualified immunity.

The Supreme Court in *Saucier* concluded that Mr. Katz's excessive force claim depended upon the "gratuitously violent shove" he allegedly received when he was placed into the military police van, although it noted that Katz had indicated that the alleged violation resulted from the "totality of the circumstances," including the way he was removed from the speaking area." *Id.*[6] The Court therefore concluded that even if Saucier had

---

[6] The Supreme Court noted that because it had granted certiorari only to determine whether qualified immunity was appropriate, it would assume that a constitutional violation could have occurred under the facts alleged simply on the general rule prohibiting excessive force. *Saucier, supra,* at 208. The court stated that even though it was doubtful that the force used was excessive, it would not rest its conclusion on that determination. *Id.* It further stated that "the question is what the officer reasonably understood his powers and responsibilities to be, under clearly established standards." *Id.*

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 32 of 43

violated the Fourth Amendment rights of Mr. Katz by the "gratuitously violent shove," that Officer Saucier was entitled to qualified immunity. *Id.* "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham v. Connor, supra,* 490 U.S. at 396, 109 S.Ct. 1865). "In

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 33 of 43

carrying out the detention, as it has been assumed the officers had the right to do, petitioner [Saucier] was required to recognize the necessity to protect the Vice President by securing respondent and restoring order to the scene." *Id.* at 208. "It cannot be said that there was a clearly established rule that would prohibit using the force petitioner did to place respondent into the van to accomplish these objectives." *Id.,* 208-209.

*Graham* and *Saucier* therefore teach us to examine the facts from the perspective of a reasonable officer on the scene. *Graham, supra,* 490 U.S. at 396. *Saucier, supra,* 533 U.S. at 208-209. In this case, by her own testimony Ms. Duffy has not shown that the force used by Officer LeBlanc when he arrested her was not "objectively reasonable" under the *Graham* test. Ms. Duffy has testified that "He grabbed my arms and swung me around and he put handcuffs on." Exhibit B, page 49.

Officer LeBlanc had observed Ms. Duffy weaving in and out of her lane. He had also observed her driving 10 miles below the speed limit. She had failed two out of the three field sobriety tests he had administered. By her own admission, she appeared to be non-complying with his commands by asking him who his supervisor was. It was 10:00 p.m. at night and Officer LeBlanc stood alone with Ms. Duffy by the side of the highway. Even if he had grabbed her and turned her around to place handcuffs on Ms. Duffy as she alleges, Officer LeBlanc would not have been acting as an unreasonable officer on the scene. It should also be noted that Ms. Duffy has provided no evidence that she had any medical or emotional injuries from this incident other than her vague claim that she is afraid of the police and no longer drives. Moreover, she did not seek any medical attention. Exhibit C,

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 34 of 43

page 5.

However, even if the court were to assume for purposes of this motion that the Officer's actions (allegedly grabbing and turning Ms. Duffy around and handcuffing her ) were excessive, a reasonable officer at the scene could have assumed that (1) Ms. Duffy was an impaired driver; (2) she was acting non-compliant or that she was implying that she was about to be non-compliant by her own admitted comments that she demanded to know who his "superior" was; and (3) it was necessary to physically grab her and turn her around in order to handcuff her. On these premises, LeBlanc is entitled to qualified immunity, and this claim should be dismissed.

### 3. False Arrest and False Imprisonment (Count Three)

As argued in Section B.1. infra, because Officer LeBlanc had probable cause to arrest Duffy, her claim for false arrest fails. As previously discussed, Officer LeBlanc had ample cause under the totality of circumstances to arrest Ms. Duffy. He drew upon his own experience and specialized training to make inferences from and deductions about the information available to him about Ms. Duffy that might elude an untrained person.

Because Officer Estes did not participate in the decision to make the arrest, this claim as to Officer Estes should be dismissed on that basis alone.

### 4. Violation of State Constitution (Count Four)

In Count Four of her Second Amended Complaint, Plaintiff alleges that the Officers violated the state constitution with respect to this incident with Ms. Duffy. Plaintiff alleges that "Defendants violated plaintiff's right to be free from the deprivation of liberty without

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 35 of 43

due process of law and the right to be secure in her person against unreasonable search and seizures guaranteed to each person by the Alaska Constitution.  However, this claim must also fail.

Due process under Alaska constitution

Under the Alaska Constitution, "No person shall be deprived of life, liberty or property without due process of Law.  Alaska Constitution, Article I, Section 7.  "The right of all persons to fair and just treatment in the courts of legislative and executive investigations shall not be infringed." *Id.*  Ms. Duffy has failed to establish that her due process rights have been violated under this Section.  There is no dispute about the fact that her car was impounded after she had been arrested.  Affidavit of LeBlanc, paragraphs 13 and 14.  Affidavit of Estes, paragraphs 3 and 4.  Deposition of Estes, Exhibit D, page 6, lines 9-18.  There is also no dispute about the fact that the prosecutor's office later dismissed the charges.  Exhibit A, page 27, lines 12-14.  Accordingly, the Plaintiff has failed to establish that any violation of her due process rights has occurred.

Search and seizure under Alaska Constitution

Officer LeBlanc's search of the backpack did not violate the Alaska Constitution.  In *Crawford v. State, supra,* 138 P.3d 254 (Alaska 2006), the Alaska Supreme Court reaffirmed its position that warrantless searches of areas within an arrestee's immediate control are justified when they are reasonably contemporaneous with the arrest.  *Id.* at 261, 262.  Here, Officer LeBlanc searched Ms. Duffy's back pack and book bag, which were on the front seat of her car, at the scene before Estes  took her for processing.  Exhibit A, pages 21-22.

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 36 of 43

Affidavit of LeBlanc, paragraph 15. LeBlanc has testified that he searched Ms. Duffy's bags "incident to an arrest." Exhibit A, page 22, line 10. Accordingly, the search of Ms. Duffy's back pack and book bag were lawful under the Alaska Constitution and the four pill bottles were lawfully seized by Officer LeBlanc.

### 5. Violation of State Law (AS 11.76.110) (Count Five)

In Count Five of her Second Amended Complaint, the Plaintiff alleges that "Certain of the Defendants violated AS 11.76.110 by depriving plaintiff of the rights afforded by the constitution of the United States of Alaska." Second Amended Complaint, paragraph 22. Plaintiff further alleges that "Defendants are liable for violation of AS 11.76.110(1), (2), and (3) and other criminal statutes. This claim also lacks merit.

Under AS 11.76.110, a person commits the crime of interfering with constitutional rights if:

> (1) the person injures, oppresses, threatens, or intimidates another person with intent to deprive that person of a right, privilege, or immunity in fact granted by the constitution or laws of this state;
> (2) the person intentionally injures, oppresses, threatens or intimidates another person because that person has exercised or enjoyed a right, privilege, or immunity in fact granted by the constitution or laws of this state; or
> (3) under color of law, ordinance, or regulation of this state or a municipality or other political subdivision of this state the person intentionally deprives another of a right, privilege or immunity in fact granted by the constitution or laws of this state.

First, the only applicable subsection of AS 11.76.110 is subsection (3), as the first two subsections apply to private persons. Secondly, the provisions of AS 11.76.110 (3) simply do not apply to the present case. As discussed elsewhere in this brief, there is no dispute about the fact that the officers did not "intentionally deprive" Ms. Duffy of a right, privilege

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 37 of 43

or immunity in fact granted by the constitution and the laws of this state.  Therefore count five also lacks merit.

### 6.  Violation of 42 U.S.C. Section 1983 (Count Six)

To succeed on a Section 1983 claim, the Plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a constitutional right. *L.W. v. Grubbs,* 974 F.2d 119, 120 (9th Cir.1992).  The Section 1983 plaintiff has to show that she was deprived of a federal right by a person acting under color of state or territorial law.  *Jones v. Union County,* 296 F.3d 417, 423 (6th Cir.2002). Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right. *Knight v. Jacobson,* 300 F.3d 1272, 1276 (11th Cir.2002). Section 1983 merely secures the federally protected rights the plaintiff already holds; it does not expand those rights. *Bradley v. Arkansas Department of Education,* 301 F.3d 952, 957 (8th Cir. 2002).

In this case, the Plaintiff has failed to establish that the Officers violated her federal rights.  As has been argued, Officer LeBlanc's stop, detention, arrest, search and seizure of Ms. Duffy's back pack and book bag on March 23, 2003 did not violate any of her federal constitutional rights.  In addition, as Officer Estes played no role in these activities, this claim as to him should be dismissed on that basis alone.

### C.  Even if the court were to find that the officers had violated Plaintiff's rights, it would find that the constitutional "rights" which the Plaintiff claims were violated were not clearly established at the time of the March 23, 2003 arrest.

If the court determines that no constitutional right has been violated, then there is "no

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 38 of 43

necessity for further inquiries concerning qualified immunity." *Saucier v. Katz, supra,* 533 U.S. 194, 121 S.Ct. 2151 (2001).  "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the specific right was clearly established." *Id.*  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." *Id.*

In this case, Officer Estes had no role in the decision to stop, detain, restrain and arrest Ms. Duffy.  All claims against him should be dismissed on that basis alone,  However, as to Officer LeBlanc, even in the unlikely event that the court were to find that he violated Ms. Duffy's rights, which the Defendants do not agree is the case, any mistake he may have made is reasonable and he is therefore entitled to qualified immunity.  While Ms. Duffy, a woman with a long history of serious mental illness, may have perceived the officer's actions as unreasonable, it is important to remember that *Graham* teaches us to examine the facts from the perspective of a reasonable officer on the scene.  490 U.S. at 396.  Ms. Duffy's poor driving gave Officer LeBlanc reasonable suspicion to stop her for driving under the influence.  Her poor driving (weaving within the lane, driving 10 miles below the speed limit), disorientation, demeanor and failure of two out of the three field sobriety tests gave him probable cause to believe that she was under the influence and should therefore not be driving.  Ms. Duffy's twice refused to cooperate with his commands that she place her hands behind her back.  However, the amount of force used by Officer LeBlanc, even assuming for

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 39 of 43

purposes of this motion that Ms. Duffy's version of events (that he "grabbed" her and "swung" her around and placed her in handcuffs) is true, was objectively reasonable under the circumstances.

**D. The court should dismiss the Plaintiff's claims against the Municipality.**

In her Second Amended Complaint, the Plaintiff has not alleged any separate cause of action on the part of the Municipality. Thus, she has failed to state a claim against the Municipality and the Municipality should be dismissed on that basis.

Moreover, "neither a municipality nor a supervisor" can be held liable for violations of constitutional rights "where no injury or constitutional violation has occurred." *Jackson v. City of Bremerton,* 268 F.3d 646 (9th Cir.2001), *referencing Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) (holding "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") *Grossman v. City of Portland,* 33 F.3d 1200, 1203 (9th Cir.1994) (same). Accordingly, because Officers LeBlanc and Estes did not violate any of Ms. Duffy's constitutional rights, there is not basis upon which to find the Municipality liable for any of the Plaintiff's claims. The court should therefore dismiss this action as to the Municipality, as well as to Officers LeBlanc and Estes.

**E. Even if the court were to hold that qualified immunity did not apply to this case, the Plaintiff is only entitled to nominal damages.**

Even if the court fails to grant this motion for summary judgment, because the

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 40 of 43

Plaintiff has failed to provide proof that she has suffered any physical or emotional damages, (other than her subjective "fear" of police and of driving) she is only entitled to "nominal damages" in this matter. *Memphis Community School District v. Stachura,* 477 U.S. 299, 307, 308 n.11, 106 S.Ct. 2537 (1986), referencing *Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042 (where no injury was present, court would only award "nominal" damages.)

### F. The court should grant the defendants summary judgment on the punitive damages claim.

Because the Plaintiff's main claims for deprivation of constitutional rights, assault and battery, false arrest and imprisonment, violation of state constitution, violation of state law, and 42 U.S.C. Section 1983 have no merit, the court should also dismiss the claim for punitive damages. In the event that the court does not grant the Defendants summary judgment on the Plaintiff's underlying claims, however, the Defendants request partial summary judgment on punitive damages. It should be noted that in no case can punitive damages be awarded against a municipality in a 42 U.S.C. Section 1983 lawsuit. *City of Newport v. Fact Concerts,* 453 U.S. 247, 101 S.Ct. 2748 (1981) (municipality is immune from punitive damages in a Section 1983 action even if it fails to object). *See also Mitchell v. Dupnik,* 67 F.3d 216, 223-24 (9th Cir.1995) (no punitive damages in Section 1983 action against sheriff in his official capacity.)

In addition, there is no evidence that the officers acted with malice or with any other evil motive. Accordingly, there is insufficient evidence to support the Plaintiff's claim for punitive damages against the individual officers. *See McCardle v. Haddad,* 131 F.3d 43, 52

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 41 of 43

(2d Cir.1997) (evidence was insufficient to support instruction for punitive damages when there was no evidence that officer acted with malice or any other evil motive.)  The Plaintiff has failed to establish LeBlanc or Estes acted with malice or any other evil motive.   Therefore, the Defendants are entitled to summary judgment regarding Plaintiff's claims for punitive damages.

## IV.  CONCLUSION

For the reasons outlined above, Sergeant Roy LeBlanc, Officer James Estes and the Municipality of Anchorage are entitled to summary judgment on all of the Plaintiff's claims under the undisputed facts.  The Officers did not violate any of Ms. Duffy's rights on March 23, 2003.  However, in the unlikely event that this court were to find that the officers violated Ms. Duffy's constitutional rights, the court should rule that the Defendants are entitled to qualified immunity on all of Ms. Duffy's claims since those rights she claims were violated were not clearly established on March 23, 2003.  The court should also rule that the Defendants are entitled to summary judgment on the claim for punitive damages.

Respectfully submitted this 1st day of September, 2006.

JAMES N. REEVES
Municipal Attorney

By: s/ Mary B. Pinkel
  Municipal Attorney's Office
  P.O. Box 196650
  Anchorage, Alaska 99519-6650
  Phone: (907) 343-4545
  Fax: (907) 343-4550
  E-mail: uslit@muni.org
  Alaska Bar No. 8505030

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 42 of 43

The undersigned hereby certifies that on 09/01/06 a
true and correct copy of the Memorandum in Support
of Motion for Summary Judgment
was served on:
       -    Karen Bretz
by first class regular mail, if noted above, or by electronic
means through the ECF system as indicated on the Notice
of Electronic Filing.

 s/ Sheri Curro
Sheri Curro, Legal Secretary
Municipal Attorney's Office

Memorandum in Support of Summary Judgment
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 43 of 43