Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska  99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Municipality of Anchorage,
Sergeant Roy LeBlanc and Officer James Estes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VIRGINIA DUFFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, | ) |
| SGT. ROY LEBLANC, individually and in | ) |
| His capacity as a police officer for the | ) |
| Municipality of Anchorage, and | ) |
| OFFICER JAMES ESTES, individually and in | ) |
| his capacity as a police officer for the | ) |
| Municipality of Anchorage, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

U.S. District Court Case No. 3:05-cv-152-TMB

### AFFIDAVIT OF JAMES ESTES

James Estes, being duly sworn upon oath deposes and states as follows:

1.  I am employed by the Anchorage Police Department as a police officer, a position I have held from June, 1999 to the present. I am currently a

detective in the Burglary Unit.

2. On the night of March 23, 2003 I served as an officer in the patrol division. The duties of patrol officers involve performing a wide range of police services and a variety of tasks, including taking appropriate action when observing or being informed of matters of health and safety. Anchorage police officers maintain order, enforce traffic codes and ordinances, and protect life and property within the Municipality. My specific duties include criminal investigation, report writing, radio communication, traffic enforcement, patrolling and security.

3. On March 23, 2003 at about 10:00 p.m., pursuant to my duties as a patrol officer, I was listening to my police radio. I heard Acting Supervisor Roy LeBlanc state that he had arrested someone for DUI at Tudor and the Seward Highway. I responded to this location to assist Officer LeBlanc.

4. When I reached the location, I noticed that Officer LeBlanc had stopped a white 1982 Datson with an Alaska plate, BVP711. I advised "Channel Two" that we needed a tow truck to come to our location for a DUI suspect. Acting Supervisor LeBlanc informed me that Ms. Duffy had not been drinking but that he believed that she was impaired by drug use of some type.

5. I then took custody of the female who was sitting in the back of Officer

LeBlanc's car and completed the processing of her for DUI. I also requested the impoundment of her car, which is the proper procedure for a DUI. According to her driver's license, this woman was Ms. Virginia Duffy.

6. I waited until the tow truck arrived and transported Ms. Duffy to the Seely substation in Anchorage for processing. As we drove to the substation, Ms. Duffy told me that she had not been drinking. I told her that although I believed she had not been drinking, state law requires that we take breath tests when we arrest people for driving "under the influence." In this case, Officer LeBlanc had arrested Ms. Duffy for driving under the influence because he had probable cause to believe that she was under the influence of prescription medications. I had no reason to question Officer LeBlanc's decision to stop and then to arrest Ms. Duffy based on the fact that she appeared to have been driving under the influence. On the contrary, Ms. Duffy's behavior was consistent with the behavior of someone who was under the influence of some type of drug or medication. She did not seem to understand or believe me when I indicated to her that I was taking her to the substation.

7. Ms. Duffy asked me how she could prove that she had not taken any medication that would impair her driving. I told Ms. Duffy that the only test I knew of that could determine if she was under the influence of such drugs

or medications was a blood test. However, during the whole time I was with Ms. Duffy, her behavior was not normal and seemed consistent with the behavior of someone who is impaired due to drugs or prescription medication. At no time during the period of time I was with her did I ever have any reason to doubt the wisdom of Acting Supervisor LeBlanc's actions in stopping or arresting her. His actions seemed appropriate in view of the way she was behaving.

8. At the Seely Substation, I started the fifteen minute observation period as required. After 15 minutes, Ms. Duffy provided a breath sample of .000. I then read Ms. Duffy her Notice of Right to Independent Chemical Test. Ms. Duffy reported that she wanted a test at municipal expense. I finished reading her the forms and gave her copies of them.

9. I then transported Ms. Duffy to Alaska Regional Hospital for a blood draw. The purpose of the blood draw was to determine if she had taken prescription or other medications, including sleeping pills and other central nervous system depressants and stimulants.

10. After the blood draw at Alaska Regional had been completed, I transported Ms. Duffy to the jail where she was remanded. I used the bail schedule to process her.

11. When I removed Ms. Duffy's handcuffs, she said she hoped that they had

not cut her wrist. However, there were no cuts visible on her wrist and I told Ms. Duffy that she did not have any cuts that I could see. Ms. Duffy told me she was worried about "micro size" cuts. I found this odd, because she did not appear to have any marks or cuts on her wrists. During my interaction with Ms. Duffy, she seemed lethargic, which led me to believe that Officer LeBlanc had correctly concluded she was under the influence of prescription medications or other drugs such as sleeping pills or other central nervous system depressants or stimulants.

12. In my experience and training as a police officer, I have learned that many prescription drugs can cause drivers to be impaired. Users of prescription medications can pose just as much of a threat to fellow drivers as users of illicit drugs. For that reason, when we officers patrol the streets of Anchorage, we are just as much on the look-out for impaired driving which results from the use or abuse of prescription medications as we are for impaired driving which results from alcohol or illicit drug use.

13. Ms. Duffy's behavior on the night I completed her arrest was consistent with that of someone who is under the influence of drugs or a substance that, when introduced into the body, acts as a central nervous system depressant or stimulant, to a degree which renders the person incapable of driving safely.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

By: _____
James Estes

Subscribed and sworn to before me this 30th day of August, 2006.



_____
Notary Public in and for Alaska
My commission expires: 2-21-09

Affidavit of Officer James Estes
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 6 of 6