Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Municipality of Anchorage,
Sergeant Roy LeBlanc and Officer James Estes

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VIRGINIA DUFFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, | ) |
| SGT. ROY LEBLANC, individually and in | ) |
| His capacity as a police officer for the | ) |
| Municipality of Anchorage, and | ) |
| OFFICER STEVE DUNN, individually and in | ) |
| his capacity as a police officer for the | ) |
| Municipality of Anchorage, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

U.S. District Court Case No. 3:05-cv-152-TMB

### AFFIDAVIT OF OFFICER STEVE DUNN

Officer Steve Dunn, being duly sworn upon oath deposes and states as follows:

1. I am employed by the Anchorage Police Department as a police officer, a position I have held from 1997 to the present. I am currently assigned to the

        Traffic Unit where my duties include traffic law enforcement, DUI enforcement, and collision investigations. I also serve as the department's Breath Test Supervisor, a drug recognition expert (DRE) and instructor, and APD academy instructor. I also serve on the department's serious traffic accident response team. I am also a Drug Impairment Training for Education Professionals (DITEP) instructor.

2.    I have served as a Drug Recognition Expert (DRE) since May, 2004. A copy of my curriculum vitae, which contains my credentials as a DRE, is attached to this affidavit as Exhibit 1. As a drug recognition expert in the traffic division, my duties entail instructing and assisting other officers where drug impairment is suspected. The DRE program was not in existence in Alaska in March, 2003. It was established in Alaska in 2004 to assist law enforcement in detecting and prosecuting drug-impaired drivers. Through this program, specially trained officers like me are called upon to assist patrol officers with cases similar to this one, when impairment is suspected but no alcohol is involved. We DRE's assist the patrol officers by conducting a standardized and systematic evaluation. Upon conclusion of this evaluation, the DRE expert will be able to determine whether a specific drug category or categories is causing the driver's impairment.

3.    I have been asked by Mary Pinkel of the Municipal Attorney's Office to

review the police reports and all discovery information concerning the arrest of Ms. Virginia Duffy on March 23, 2003 for driving under the influence. I have also now had the opportunity to review the recent deposition transcripts of Virginia Duffy and Officers LeBlanc and Estes. On April 25, 2006, I wrote a report which contained my conclusions as well as data relied upon. A copy of my expert report is attached to this affidavit as Exhibit 2.

4. In my report, I wrote that actions taken by Officer LeBlanc in stopping, arresting and searching Ms. Duffy's bags, in addition to the amount of restraint that was used, was appropriate and in keeping with department policy. I also wrote that that in my opinion both Officers performed their duties as officers and investigators appropriately and within the scope of state statute and policies.

5. I strongly feel that the outcome of the criminal case against Ms. Duffy may have been different if the Drug Recognition Expert program was in existence in March, 2003 when this incident occurred. As an expert in this field, however, I would have taken the same actions as these Officers if presented with the same scenario. Had these officers not taken the actions they took, they would have been remiss in their duties.

6. At the time I wrote my report, I did not have the benefit of having read Ms. Duffy's or the officers' depositions, as they had not yet been taken.

However, now that I have read these depositions, my conclusion that the officers acted appropriately is confirmed. Even if one were to assume that Ms. Duffy's version of events is true, both officers acted appropriately.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

By: _____
Steve Dunn

Subscribed and sworn to before me this 31st day of August, 2006.



_____
Notary Public in and for Alaska
My commission expires: 2-21-09

Affidavit of Officer Steve Dunn
Duffy v. Municipality of Anchorage and Officers LeBlanc and Estes
U.S. District Court Case No. 3:05-cv-152-TMB
Page 4 of 4

# ANCHORAGE POLICE DEPARTMENT

*TRAFFIC DIVISION*



The Resume of:

## OFFICER STEVE DUNN
Certified Drug Recognition Expert



Latest update: 02/01/06

Exhibit 1

# Officer Steve Dunn

Introduction

Officer Steve Dunn has been employed with the Anchorage Police Department for over 10 years and currently holds an Advance Police Certificate issued by the State of Alaska Police Standards Council. He is currently assigned to the Traffic Unit where his duties include traffic law enforcement, DUI enforcement, and collision investigations.

Officer Steve Dunn also serves as the department's Breath Test Supervisor, standardized field sobriety instructor, Drug Impairment Training for Educational Professionals (DITEP) instructor, Drug Recognition Expert (DRE) instructor, APD academy instructor and is currently on the department's serious traffic accident response team.

Law Enforcement Experience

| | |
|---|---|
| 11/15/03 to Present | Officer, Traffic Division<br>Anchorage Police Department |
| 07/21/97 to 11/15/03 | Officer, Patrol Division<br>Anchorage Police Department |
| 01/05/96 to 07/21/97 | Dispatcher<br>Anchorage Police Department |

Special Police Training

| | |
|---|---|
| 01/06 | National Highway Traffic Safety Administration and International Association of Chiefs of Police<br>**DRE Instructor School** |
| 11/05 | Alaska Highway Safety Office<br>**Alaska Impaired Driving Summit** |
| 08/05 | International Association of Chiefs of Police<br>**11th Annual IACP DRE Training Conference on Drugs, Alcohol, and Impaired Driving** |

## Officer Steve Dunn

<u>Special Police Training</u>   (continued)

| | |
|---|---|
| 03/05 | State of Alaska Scientific Crime Detection Laboratory<br>**Breath Test Supervisor Recertification Course** |
| 11/04 | United States Department of Transportation<br>Federal Motor Carrier Safety Administration<br>**North American Standard Level I (CVE)** |
| 10/04 | National Highway Traffic Safety Administration and<br>International Association of Chiefs of Police<br>**Drug Impairment Training for Educational Professionals Instructor Course** |
| 09/04 | Las Vegas Metropolitan Police Department and<br>Trinka Porrata<br>**International GHB & Chemical Drug Conference** |
| 05/04 | National Highway Traffic Safety Administration<br>**Drug Evaluation and Classification Training: DRE School** |
| 05/04 | National Highway Traffic Safety Administration<br>**Drug Evaluation and Classification Training: Pre DRE School** |
| 04/04 | American Prosecutors Research Institute<br>**Protecting Lives, Saving Futures: Apprehension, Detection and Prosecution of Impaired Driving Cases** |
| 03/03 | National Highway Traffic Safety Administration<br>**DWI Detection and Standardized Field Sobriety Testing Instructor Preparation Course** |
| 02/02 | State of Alaska Scientific Crime Detection Laboratory<br>**Breath Test Supervisor School** |

## Officer Steve Dunn

<u>Special Police Training</u>   (continued)

| | |
|---|---|
| 01/02 | Northwestern University Center for Public Safety<br>**Accident Investigation 1** |
| 04/01 | Anchorage Police Department<br>**Crime Scene Investigation** |
| 10/00 | Anchorage Police Department<br>**Basic Accident Investigation** |

<u>Specialized Readings</u>

| <u>Title</u> | <u>Author</u> |
|---|---|
| Nystagmus Testing in Intoxicated Individuals | Karl Citek, O.D., Ph.D., Bret Ball, O.D., Dale A. Rutledge, Lieutenant |
| Admissibility of Horizontal Gaze Nystagmus Evidence | American Prosecutors Research Institute |
| Alcohol Toxicology for Prosecutors | American Prosecutors Research Institute |
| What are "Field Sobriety Tests" | George L. Bianchi<br>The Bianchi Law Firm |
| Horizontal Gaze Nystagmus | Lawrence Taylor |
| Drugs and Human Performance Fact Sheets | National Highway Traffic Safety Administration |
| Drivers who use illicit drugs: behavior and perceived risks | Aitken, C., Kerger, M, Crofts, N.<br>Drugs: Education, Prevention and Policy |
| Marijuana Revisited | Archer, J., Lopata, A.<br>Personnel and Guidance Journal |

## Officer Steve Dunn

Specialized Readings   (continued)

| Title | Author |
|---|---|
| Cognitive and subjective dose-response effects of acute oral tetradydrocannabinol (THC) in infrequent cannabis users | Curran, H., Brignell, C., Fletcher, S., Middleton, P., Henry, J. Psychopharmacology |
| Adverse effects of cannabis | Hall, W., Solowij, N. The Lancet |
| Cannabis and the brain | Iversen, L. Brain |
| Cannabis and driving: a new perspective | Kane, C., Tutt, D., Bauer, L. Emergency Medicine |
| Visual search and urban city driving under the influence of marijuana and alcohol | Lamers, C., Ramaekers, J. Human Psychopharmacology |
| Attitudes and experiences of people who use cannabis and drive | Lenne, M, Fry, C, Dietze, P, Rumbold, G. Drugs: Education, Prevention and Policy |
| Separate and combined effects of marijuana and alcohol on mood, equilibrium and simulated driving | Liguori, A., Gatto, C., Jarrett, D. Psychopharmacology |
| Marijuana's effects on human cognitive functions, psychomotor functions, and personality | Murray, J. |
| Marijuana, alcohol and actual driving performance | Ramaekers, J., Robbe, W., O'Hanlon, J. |
| Marijuana's impairing effects on driving are moderate when taken alone but severe when combined with alcohol | Robbe, H. |

## Officer Steve Dunn

Specialized Readings   (continued)

| Title | Author |
|---|---|
| An evaluation of pupil size standards used by police officers for detecting drug impairment | Jack E. Richman, O.D., Kathleen Golden McAndrew, M.S.N., ARNP, Donald Decker, and Stephen C. Mullaney, B.S., M.S. |

| ORIGINAL | INVESTIGATIONS | CLASSIFICATION | GOLDENROD |



# NARRATIVE FORM
## Drug Recognition Expert



Case No.: **03-15750**                                          Date Occurred: 03-23-2003

Type Crime: DUI            Location: New Seward / Tudor            DRE Log No:

---

    I was contacted by Municipal Attorney Mary Pinkel in reference to an ongoing civil case involving Anchorage Police Sergeant LeBlanc and Officer Estes. I was asked to review the case file and render an opinion of the details and actions taken by these officers based on my knowledge and experience as a certified Drug Recognition Expert, SFST instructor, Breath Test Supervisor, and APD academy DUI instructor. I was provided with discoveries from the defense and Municipal Attorney's office, medical files and lab reports for Ms. Duffy and police reports from Sergeant LeBlanc and Officer Estes.

    According to the police report, on 3-23-03, at about 2146 hours, Sergeant LeBlanc was traveling northbound on the New Seward Highway behind a sedan driven by Virginia Duffy. Sergeant LeBlanc noticed that Ms. Duffy's vehicle was traveling about 10 mph below the posted speed limit of 65 mph. He decided to follow Ms. Duffy's vehicle as it continued northbound and saw the vehicle weave from "line to line" then "swerved substantial to the right." The vehicle then corrected sharply back to the lane of travel and at this point Sergeant LeBlanc decided to initiate the traffic stop.

    The first phase of DWI detection, as taught in the APD police academy, is the observation of the vehicular operation. If the officer observes vehicular maneuvers or human behaviors that may be associated with driving impairment then reasonable suspicion has been developed. Such vehicular maneuvers could result in traffic violations or merely driving actions such as drifting within a lane or driving slower than normal speeds.

    In 2003, the Anchorage Police Department operational procedure for Driving While Intoxicated states, "A vehicle obviously exhibiting characteristics of DWI should be stopped whether or not an actual traffic violation has occurred. Previous suspicion of intoxication, whether through the officer's earlier contact with the driver or through other good information, gives an officer not only a right, but an obligation to effect a stop."

    Driving 10 mph below the posted speed limit in itself does not suggest that a driver might be impaired. However, driving 10 mph below the posted speed limit combined with driving actions such as weaving and sharp corrections is a strong indication of driver impairment. Police officers sometimes fail to recognize these types of clues and as a result do not take steps to contact drivers and investigate further. In my opinion, Sergeant LeBlanc established reasonable suspicion and took the appropriate action to effect the traffic stop for further investigations.

Exhibit  a

---

Name: **S. DUNN**          DSN: **1361**          04/25/06                                          1

| ORIGINAL | INVESTIGATIONS | CLASSIFICATION | GOLDENROD |
|---|---|---|---|



# NARRATIVE FORM
## Drug Recognition Expert



Case No.: **03-15750**　　　　　　　　　　　　　　　　　Date Occurred: 03-23-2003

Type Crime: DUI　　　Location: New Seward / Tudor　　　DRE Log No:

---

　　Sergeant LeBlanc then made contact with Ms. Duffy who "seemed confused and disoriented." She fumbled and searched through her wallet several times before producing her driver's license. When asked where she was coming from, Ms. Duffy was "confused and unsure." Sergeant LeBlanc indicated no odor of alcohol was present, however, Ms. Duffy's "demeanor and behavior seemed inappropriate and inconsistent with the situation and questions."
　　The second phase of DWI detection is the personal contact with the driver. This face-to-face observation and interview with the driver allows the officer to use senses such as sight, hearing and smell to gather evidence of alcohol and/or drug influence. In this case, Sergeant LeBlanc saw that Ms. Duffy appeared confused and disoriented with no odor of alcohol so he questioned her use of prescription medication. Her subsequent actions led him to the decision that field sobriety tests were necessary. In my opinion, Sergeant LeBlanc took the appropriate action after making his observations of Ms. Duffy's behavior. To establish probable cause, Officers are trained to conduct a series of standardized field sobriety tests which is the last phase of DWI detection.

　　According to Sergeant LeBlanc, Ms. Duffy exited her vehicle for field sobriety tests and he noticed that she swayed while standing. She was dressed appropriately for the weather and wore sandal type footwear. She indicated she had bad ankles, however, no clarification on why they were bad. He administered the three standardized field sobriety tests which are; 1) Horizontal Gaze Nystagmus, 2) Walk and Turn, 3) One Leg Stand.
　　During the Horizontal Gaze Nystagmus test, Sergeant LeBlanc noticed that Ms. Duffy was swaying from side to side. He used an APD pen as a stimulus and a flashlight to illuminate Ms. Duffy's eyes. He saw that both of her pupils were equal in size and they tracked together with reaction to light. Upon administering the test, Sergeant LeBlanc saw distinct nystagmus at maximum deviation in both eyes and no other clues were observed. There are 6 possible clues for the Horizontal Gaze Nystagmus test and Sergeant LeBlanc saw 2 clues.
　　Sergeant LeBlanc provided instructions and a demonstration of the Walk and Turn test to Ms. Duffy and noted that she was unable to maintain the starting position. She became irritated and impatient; however, he made sure she understood the test. Ms. Duffy attempted to start the test before being told to do so. Once she began the test, Ms. Duffy used her arms for balance and failed to touch heel-to-toe on every step except for one. The turn was made improperly by taking several steps. There are 8 possible clues for the Walk and Turn test and Sergeant LeBlanc saw 5 of the 8 clues.

---

Name: **S. DUNN**　　　DSN: **1361**　　　04/25/06　　　　　　　　　　2

| ORIGINAL | INVESTIGATIONS | CLASSIFICATION | GOLDENROD |



# NARRATIVE FORM
## Drug Recognition Expert



Case No.: **03-15750**                                                                 Date Occurred: 03-23-2003

Type Crime: DUI          Location: New Seward / Tudor           DRE Log No:

---

Sergeant LeBlanc then administered the One Leg Stand test by providing instructions and a demonstration. He indicated Ms. Duffy became impatient and irritated and again he noticed body sway. Ms. Duffy was unable to keep her foot off of the ground and nearly fell. She was not able to complete the test.

The field sobriety tests are a series of psychophysical tests used to assess a person's mental and/or physical impairment. NHTSA (National Highway Traffic Safety Administration) developed a series of three test battery which are 1) Horizontal Gaze Nystagmus, 2) Walk and Turn, and 3) One Leg Stand. These tests were scientifically validated and there are certain clues officers are trained to look for. Along with these clues, criterion points are also established. These criterion points are often referred to as arrest decision points. If a subject exhibits the established number of arrest decision points (or maybe more), there is a percentage of probability that their BAC will be above 0.10. Officers are trained to administer all three tests and the percentage of probability goes up as arrest decision points are observed on other tests as well.

For the Horizontal Gaze Nystagmus, 3 possible clues are observed per eye for a total number of 6 clues. Nystagmus is the involuntary jerking of the eyes caused by alcohol or drugs that fall into three categories. They are Central Nervous System depressants, any inhalants, or disassociative anesthetics such as PCP. During this test, each eye is examined for lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, onset of nystagmus prior to 45 degrees, and vertical nystagmus. One clue is given to each except for vertical nystagmus because this will likely be present in PCP use or if a subject consumes excessive amounts of alcohol or drugs, more than what their body can handle. The arrest decision point for the Horizontal Gaze Nystagmus test is 4 out of the 6 clues. Sergeant LeBlanc observed 2 out of the 6 possible clues on Ms. Duffy.

The Walk and Turn test has 8 validated clues. They are 1) Cannot balance during instruction, 2) Starts too soon, 3) Stops while walking, 4) Misses heel-to-toe, 5) Steps off line, 6) Uses arms to balance, 7) Improper turn, and 8) Wrong number of steps. The arrest decision point for the Walk and Turn test is 2 out of the 8 clues. Sergeant LeBlanc observed 5 of the 8 clues on Ms. Duffy.

The One Leg Stand test has 4 validated clues. They are 1) Swaying, 2) Using arms to balance, 3) Hopping and 4) Putting the foot down. The arrest decision point for the One Leg Stand test is 2 out of the 4 clues. Sergeant LeBlanc observed 2 of the 4 clues on Ms. Duffy. She was unable to complete the test.

---

Name: **S. DUNN**        DSN: **1361**        04/25/06                                                    3

| ORIGINAL | INVESTIGATIONS | CLASSIFICATION | GOLDENROD |




# NARRATIVE FORM
## Drug Recognition Expert

Case No.: **03-15750**                                    Date Occurred: 03-23-2003

Type Crime: DUI         Location: New Seward / Tudor         DRE Log No:

---

    Sergeant LeBlanc administered the 3 test battery as instructed in the police academy. Clues of impairment were observed in all three tests which elevates the probability that Ms. Duffy was impaired. The Anchorage Police Department operational procedure for Driving While Intoxicated states, "If the field sobriety tests or other investigation confirm impairment or intoxication, arrest is appropriate." In my opinion, Sergeant LeBlanc made the appropriate decision to arrest Ms. Duffy for DUI. The result of the field sobriety tests strongly establishes the probable cause for the arrest.

    According to Sergeant LeBlanc, he told Ms. Duffy that she was under arrest for DUI and told her to turn around. Ms. Duffy initially replied by saying "no." She was advised of the consequences of an additional charge of resisting and she subsequently complied when Sergeant LeBlanc placed his hand on her right arm. At this point, Sergeant LeBlanc is authorized by State Statue as well as department policy to use the force necessary to take Ms. Duffy into custody. According to Sergeant LeBlanc's police report, no other force was necessary because Ms. Duffy was handcuffed without incident. There were no other complaints of injuries by Ms. Duffy until she was remanded into jail by Officer Estes. At this point, she was concerned that the handcuffs might have cut her wrists; however, no injuries were observed by Officer Estes.

    Officer Estes responded to the scene and took custody of Ms. Duffy for the DUI processing. This is common practice. Prior to taking custody of Ms. Duffy from Sergeant LeBlanc, Officer Estes requested a tow truck for the DUI impound. According to the CAD print out of the call, Sergeant LeBlanc advised Dispatch that Ms. Duffy was in custody at 2200 hours and Officer Estes requested the DUI impound at 2208 hours. Once in Officer Estes' custody, Ms. Duffy apparently asked for her back pack and book bag from the vehicle. For safety issues, officers are required to search items such as back packs, book bags, or purses for weapons before allowing the owner to take custody of the items. Ms. Duffy was in custody which further requires that her back pack and book bag be searched. In this case, her back pack was open and in plain view were prescription bottles and pills. Ms. Duffy indicated she was not taking any medication when asked by Sergeant LeBlanc earlier. Sergeant LeBlanc appropriately seized the bottles and the unknown pills as evidence.

    Officer Estes conducted the required 15 minute observation period and Ms. Duffy provided the required breath sample with a result of .000 BrAC at the Seely Substation. She elected to have the Independent Chemical Test at municipal's expense and Officer Estes transported her

---

Name: **S. DUNN**     DSN: **1361**     04/25/06                                            4

| ORIGINAL | INVESTIGATIONS | CLASSIFICATION | GOLDENROD |



# NARRATIVE FORM
## Drug Recognition Expert

Case No.: **03-15750**　　　　　　　　　　　　　　　Date Occurred: 03-23-2003

Type Crime: DUI　　　Location: New Seward / Tudor　　　DRE Log No:

---

to Alaska Regional Hospital, who at that time held the contract to draw and store blood samples for the Anchorage Police Department. Upon completion of the blood draw at Alaska Regional Hospital, Officer Estes elected to use the bail schedule instead of conducting a bail hearing with the on duty Magistrate. By using the bail schedule, only a $250 unsecured bail was set. This limited the possibility of a secured bail or other stipulations that might have been set by the on duty Magistrate if Officer Estes was to do a bail hearing.

　　According to the police report, Sergeant LeBlanc applied for and received a search warrant on 3-26-03 to have the blood taken from Ms. Duffy during the independent chemical test checked for the presence of drugs. Sergeant LeBlanc suspected that Ms. Duffy was under the influence of drugs and in my opinion, his request for the search warrant was appropriate and in addition, common practice.

　　The drug screen was conducted by National Medical Services for Alaska Regional Hospital. The drug screen was done by Enzyme-Linked Immunosorbent Assay which shows no drugs detected when tested for Opiates, Cocaine/metabolites, Benzodiazepines, Cannabinoids, Amphetamines, Barbiturates, Methadone, Phencyclidine (PCP), and Propoxyphene. I am aware of several drugs that a drug screen done by Enzyme-Linked Immunosorbent Assay will not detect. These drugs include Soma, Ambien, Dextromethoraphan, Lorazepam, Ativan, Alprazolam and Klonopin. These drugs can be detected if tested by a Gas Chromatography Mass Spectrometry. These drugs are Central Nervous System depressants which cause Horizontal Gaze Nystagmus (HGN). During this test on Ms. Duffy, Sergeant LeBlanc observed Horizontal Gaze Nystagmus. As indicated earlier, HGN is only present in 3 drug categories. Besides the Central Nervous System depressants, Inhalants and Disassociative Anesthetics drugs like PCP cause HGN. Inhalants and PCP can be ruled out because there was no mention of an odor of an inhalant or a chemical odor found in PCP. In addition, Ms. Duffy's demeanor and behavior as described by Sergeant LeBlanc and Officer Estes were consistent with the symptoms of CNS depressant use.

　　In my opinion, Sergeant LeBlanc and Officer Estes performed their duties as Police Officers and Investigators appropriately and within the scope of State Statute and department policies. I strongly feel that the outcome of the criminal case against Ms. Duffy might have been different if the Drug Recognition Expert program was in existence during this time. As an expert in this field, I would have repeated the same actions taken by these Officers if presented with the same scenario.

---

Name: **S. DUNN**　　　DSN: **1361**　　　04/25/06　　　　　　　　　　　　　　　5

